The United States v. Jehan is next for argument. Ms. Gambino. Good morning, Judge Easterbrook, Judge Bower, and Judge Sykes. On behalf of Mr. Jehan, the crux of the issue here is the contract that he entered into with the government and whether the district court was correct in denying his 3582C motion, believing that she was precluded from doing so by the United States Supreme Court's decision in Freeman v. United States and your court's decision in United States v. Wray. And it is our position that Mr. Jehan's plea agreement is atypical of the plea agreements that were dealt with in either Freeman or Wray in that the parties had specifically negotiated for the ability of Mr. Jehan's sentence to be reduced in three separate ways. First, by the government's 5K1 motion. Second, by the possibility of a 35B motion. And third, there was an explicit exemption from the waiver of appeals for 3582C motions that may come up in the future. And so when we look first to Freeman, and the narrowest point of agreement on Freeman, of course, was Justice Sotomayor's decision, she wanted the sentencing decision to be based on the guidelines, and she was particularly concerned, as this court has been, about disrupting an 11C1C plea agreement. What takes Mr. Jehan's plea agreement outside of that concern is that, first of all, the guidelines in Mr. Jehan's agreement were clearly articulated. And not only was there a C provision, but the government had three carrots and a great big stick, and used the guidelines as the stick to say that if it decided in its discretion not to recommend a reduction for Mr. Jehan because his cooperation was not sufficient, then we would not be operating under 11C1C, we would be going back to 11B. So the guidelines in this particular plea agreement were critical. And it really does ignore reality to say that a reduction in sentence is not based on the guidelines because, of course, the guidelines are the very point of starting when the parties look to negotiating a reduction, and particularly in this case, where the guidelines were life straight with no numerical sentence, and it's quite often the case that the U.S. Attorney's Office in this district, as it did in here, looks first to the 360 to life, which is the next level down. Mr. Jehan was an older defendant. I'm sure that that had something to do with the 300 rather than the 360. But it was clearly tied to the guidelines themselves, and Mr. Jehan was very clear that if he didn't perform in the requested way, that he would be facing his straight guideline possibility of life imprisonment. So if the court were to decide against Mr. Jehan in this case, it would basically be negating a provision of the plea agreement that he negotiated for. And the concern both of this court and the Supreme Court is that where plea agreements are treated as contracts, that the provisions of the contract be upheld. And unlike the usual 11C1C agreement, where there's an agreed-upon sentence and that's the end of the story, this plea agreement specifically provided for other means of reducing Mr. Jehan's sentence. So for those reasons, it's our position that the district court was not correct when it found that it was without jurisdiction to look at this. Now that's not to say or predict what the outcome will be in this particular case. However, it is also clear that Mr. Jehan, apart from being eligible for the 3582C motion, has performed well since he's been in custody and has done absolutely everything a person can do to earn further consideration. And finally, Your Honors, I think there's a policy problem at issue here. When you take a person who has turned the quarter, agreed to cooperate with the government, has entered into a particular plea agreement or contract, and then on the other side, the law has changed and times have changed. And part of the reason for the reduction that Mr. Jehan is seeking is the social general recognition of the legal community that the guidelines were too high, that they resulted in race-based disparities in sentencing, and that there were too many people in prison and that we needed to do something about that. So there's really no principled reason for saying that someone who enters into an ordinary plea agreement, who does not turn their life around in a particular way and commit to helping himself and the government, should be the beneficiary of such reductions. But someone who does make this commitment to change and actually help himself and the government is not permitted to do so. And particularly in this case, where we don't have the open and shut 11C1C agreement without the negotiated provisions. So I think it would be both consistent with the law and the contract principles that this Mr. Jehan be permitted to present and have considered by the district court his motion for a reduction of sentence. And if there are no questions, Your Honors, I reserve the rest of my time for rebuttal. Certainly, Ms. Gambino. Mr. Lee. May it please the Court. My name is Stephen Lee on behalf of the United States. The district court's ruling here should be affirmed. The district court correctly found that it lacked authority to reduce the defendant's sentence because his 300-month sentence had been agreed upon by the parties and stated as such in the plea agreement and it was not tied to the applicable guideline range, which was life. The defendant contends that the inclusion, that a limitation on the waiver in his plea agreement somehow indicates that his sentence was based on the guidelines. That limitation on the appellate waiver in his plea agreement was not a concession or an agreement by the government that the defendant would be entitled to future 3582 relief and it did not expand the district court's authority. It was simply a reflection that if there was a 3582 amendment that would be applicable to him that he would be allowed to make such a request. How was the 300-month sentence arrived at that the parties agreed to? Your Honor, it's not clear from the plea agreement. I was not on the AUSA handling the case originally and I think that's one of the issues here. This is not a situation where there is, well, even situations where there is a clear connection in the plea agreement or a logical connection between the guideline range and the recommended sentence. This court has not found that that's necessarily enough to find that a sentence for a cooperator was based on the guideline range. Here there's nothing to indicate how the parties determined that 300 months was an appropriate measure given the guideline range. I think that's one of the big problems here because there is nothing to connect the sentencing recommendation to the guideline range here. And I think that shows ultimately that the sentence that was imposed and the sentence was agreed upon by the parties was not based on the guideline range in the way that Justice Sotomayor set forth in the Freedman decision. Unless the court has any further questions, the government asks that you affirm the denial of defense motion. Thank you, counsel. Anything further, Ms. Gambino? It's worth noting, and it's important to note, that the ultimate sentence that Mr. Jehan received was not the 300 months originally contemplated because of the second caret provided by the government which contemplated him getting a further reduction if he were to continue to cooperate. So his sentence was reduced from 300 to 240 months. And you can't ignore the provision that allows him to proceed with a 3582 motion. It's not the contention of Mr. Jehan that this does anything to tie the sentence to the guidelines, but it does point out that it's part of the contract provisions for which the parties negotiated, and it does not prohibit in the way a typical 11C1C prohibits further consideration. And Justice Sotomayor said that it wasn't all 11C1Cs, that it wasn't a blanket prohibition on 3582 motions or reductions in such cases. So we would ask that the court reverse the district court's decision and require her to hear Mr. Jehan's motion. Thank you. Thank you very much, counsel. The case is taken under advisement.